**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| STACIE LASHAY SHIVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.   1:14cv1165-WHA |
| | ) | |
| CAREER CONSULTANTS, INC.   d/b/a | ) | (wo) |
| FORTIS COLLEGE DOTHAN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment filed by Defendant Career Consultants, Inc. d/b/a Fortis College Dothan (Doc. #27).

The Plaintiff filed a Complaint on November 20, 2014, and filed an Amended Complaint on March 16, 2015, bringing claims for race discrimination in violation of Title VII and 42 U.S.C. §1981, using employees Ricardo Rojas ("Rojas") and Benjamin Coale ("Coale") as comparators (Count I); gender discrimination in violation of Title VII, with Rojas and Coale as comparators (Count II); retaliation in violation of Title VII (Count III); and violations of the Equal Pay Act ("EPA"), using Rojas and Coale as comparators (Count IV).

The court has federal question subject matter jurisdiction in this case raising federal claims. 28 U.S.C. §1331.

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED in part and DENIED in part.

**II.   SUMMARY JUDGMENT STANDARD**

Summary judgment is proper "if there is no genuine issue as to any material fact and    . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.   Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."   Fed. R. Civ. P. 56 (c)(1)(A),(B).   Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

2

material fact and the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).

## III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

The Plaintiff, Stacy Shiver ("Shiver"), is an African-American woman who was employed by the Defendant, Fortis College, at its Dothan Campus as an Admissions Representative.   Fortis College ("Fortis") offers post-secondary educational and specialty career training to students through a variety of diploma programs.

Admissions Representatives advise students regarding enrollment into the institution. Essential duties and responsibilities of Admissions Representatives include presenting features and benefits of program offerings and "accurately present[ing] the responsibility of the student as to what it takes to successfully start school, be successful in school, and motivate the student to graduate from school."   (Doc. #29-1 at p.128).

Shiver was hired by Fortis in July of 2009.   Shiver contends that throughout her employment she was the lowest paid Admissions Representative, even though she was the only one to be promoted to Senior Admission Representative.   Shiver was hired at an annual salary of $26,000.   Prior to her employment, Shiver had completed high school, attended Troy State University, served in the military, and worked at other places of employment.   No other Admissions Representatives were employed by Fortis at the time Shiver was hired.   At the time Shiver was hired, she communicated her need not to work evenings and weekends because she was a single mother with childcare obligations.

3

In December of 2009, Fortis hired Coale, a white man, as an Admission Representative. Coale had a biology degree and was hired at a starting salary of $32,000.   Coale and Shiver had the same job duties.

In July of 2010, Shiver's pay was increased to $27,300 and Coale's was raised to $33,600.

In October of 2010, Shiver filed a Charge of Discrimination with the EEOC alleging pay discrimination based on race and gender.   Shiver did not, however, file suit based on this charge.

Shiver and Coale each received additional pay raises.

In April 2013, Shiver complained to Regional Vice President Laureen Cahill ("Cahill") about Coale being paid more than she for doing the same job.   Shiver followed up this discussion with an email.    Cahill conferred with Human Resources Director Penny Hosey ("Hosey"), and Hosey subsequently sent Cahill an email with an attachment from Salary.com to show her that her pay was acceptable for the local market.

On June 14, 2013, Coale resigned.   Fortis then hired Rojas and Leanna Pennington. Rojas, a Hispanic man, was hired as an Admissions Representative at a salary of $40,000.   Rojas had a bachelor's degree in Human Services/Management.   He also had four and a half years of experience working as an enrollment advisor for the University of Phoenix.   Leanna Pennington ("Pennington") was also hired as an Admissions Representative at a salary of $35,000.   Shiver was asked to help train these Admissions Representatives.

Jourdeanna Yates ("Yates"), an African-American woman, is the National Director of Admissions for Fortis.    In June, 2013, Yates visited the Dothan campus and suggested to Shiver, Leanna Pennington, Rojas, and Campus Director Patrick Donivan ("Donivan"), that Dothan provide evening and weekend coverage in the admissions department.   (Doc. #29-7 at p.

83:8-84:23).   Shiver initially agreed to work until 8:00 p.m. on Mondays, 4:00 p.m. on Fridays,

and until 5:00 p.m. on the other work days, and to work on rotating Saturdays.   Rojas and

Pennington also worked on weekends and evenings.

On October 16, 2013, Shiver's title was change to Senior Admissions Representative.

On December 9, 2013, Shiver filed a Charge of Discrimination with the EEOC, alleging

pay discrimination based on race and sex.

At some point after July 2013, Shiver stopped working weekends and evenings for a short

period of time.[1]   In March 2014, Shiver was again asked to modify her schedule and return to

working evenings and weekends, and on March 28, 2014, Shiver was placed on a Performance

Improvement Plan by Donivan and Cahill.   Shiver communicated to Donivan that she would not

work the new schedule because of childcare issues.   On April 1, 2014, Shiver was terminated for

being unwilling to adjust her schedule.

## IV. DISCUSSION

Fortis has moved for summary judgment on Shiver's claims on grounds of untimeliness

and as to the merits.   Before the court turns to the merits arguments raised as to each of the claims,

the court will first address Fortis's untimeliness grounds for summary judgment.

### Arguments Regarding Timeliness of Shiver's Claims

Fortis contends that all of Shiver's claims in her Amended Complaint based on facts which

were raised in an October 5, 2010 EEOC charge alleging discrimination in comparison to Coale

---

1   Shiver states in her brief that Fortis "ceased requiring Ms. Shiver to work weekends and
evenings," citing Donivan's deposition at pages 156:13-157:12. (Doc. #35 at p.17).   That portion
of the deposition, however, states merely that Shiver had been working some nights and weekends
but "had decided not to do it anymore" and that she had been doing that for a "couple of weeks."
(Doc #29-3 at p. 156:13-157:12).

are untimely filed.   Fortis states that Shiver filed the EEOC charge on October 5, 2010, received a notice of right to sue on or about December 28, 2010, and did not file suit until November 2014. Fortis states that Shiver's Title VII claims based on a comparison to Coale are barred as not having been filed within 90 days of the right to sue letter, her claims under §1981 are barred as not having been filed within four years of the date she was aware of her claim, and her EPA claim is barred as not having been filed within two years of the date she was aware of her claim.

Shiver responds that her claims are timely because they are continuing violations.

The court begins with the timeliness of Shiver's EPA claim.   A cause of action under the EPA is "forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued...." 29 U.S.C. § 255(a).

Fortis argues that the court should find Shiver's EPA claim to be time-barred based on the date upon which she was aware that a decision had been made to pay Coale differently than Shiver, citing to *Villa v. Waters*, No. SA-09-CV-0113 XR, 2009 WL 578482 (W.D. Tex. March 5, 2009). In that out-of-circuit, district court case, the court applied accrual principles to find that a claim was time-barred, however, "[t]he theory of continuing violations has been applied consistently to actions under the Equal Pay Act." *Mitchell v. Jefferson County Bd. of Educ.*, 936 F.2d 539, 548 (11th Cir.1991).

In the Eleventh Circuit, when applying the concept of a continuing violation, it is not the date of the original decision which is relevant, but instead what is "determinative for statute of limitations purposes is that . . . plaintiffs have [were paid or denied pay] during the statute of limitations window."  *Knight v. Columbus, Ga.*, 19 F.3d 579, 582 (11th Cir. 1994).   In *Knight*,

the court explained that each violation gives rise to a new cause of action, which starts a new statute of limitations period as to that event. *Id.*   Therefore, any claim based on a paycheck received within the statutory period is not time-barred.   *Id.*; *see also Nealon v. Stone*, 958 F.2d 584, 591 n. 5 (4th Cir.1992) (holding that as applied to an Equal Pay Act claim, although a plaintiff is limited only to those damages that accrued during the two- or three-year period prior to filing suit (depending on whether the violation was willful or not), the continuing violation theory essentially treats each paycheck as a new violation of the EPA), *cf. Roberts v. Gadsden Mem. Hosp.*, 850 F.2d 1549 (11th Cir. 1988) (claim for denial of promotion is time barred as a "claim arising out of an injury which is 'continuing' only because a putative plaintiff knowingly fails to seek relief . . . ." ).

Another judge within this district has analyzed an EPA statute of limitations argument where the defendants argued that the plaintiff's claim was barred because the plaintiff first knew that she was paid differently than males were paid by her employer more than two years prior to filing suit.   *See Scroggins v. Troy Univ.*, No. 2:13cv63-CSC, 2014 WL 766315, at *5 (M.D. Ala. Feb. 26, 2014).   The court cited to *Knight* for the proposition that where there is a continuing violation, plaintiffs can recover for any violations for which the statute of limitations has not expired.   *Id.*   The court reasoned that under a continuing violation theory, paychecks received within two years before the filing of a lawsuit were not time-barred, regardless of when the plaintiff was aware of a difference in pay.   *Id.*   This court is persuaded that *Knight* applies the same way in this case.

Shiver filed her original Complaint in this case on November 20, 2014.   Shiver's last day of employment was April 1, 2014.   Therefore, under *Knight*, claims based on paychecks Shiver

received two years prior to November 20, 2014, or three years if there were a finding of willfulness, fall within the EPA statute of limitations.

Fortis has also moved for summary judgment on timeliness grounds as to the Shiver's Title VII pay claims with Coale as a comparator, based on the date of her first EEOC charge.   Shiver clarifies in her brief that as it relates to Coale, she is only pursuing her race claim pursuant to §1981 and not pursuant to Title VII, apparently conceding the merits of the timeliness argument with respect to the Title VII race claim based on Coale as a comparator. (Doc. #35 at p.39 n.18). Summary judgment is, therefore, due to be GRANTED as to Shiver's Title VII claims for race and gender discrimination based on Coale as a comparator.

With respect to the §1981 race claim, Fortis argues that Shiver was aware of her claim as it relates to Coale when she completed her first EEOC Charge in October of 2010, so that a Complaint filed in November 2014 was outside of the four-year statute of limitations.   For the reasons discussed in connection with the EPA claim above, the court concludes that Shiver's §1981 race claim also is not time-barred because some paychecks Shiver received fell within the limitations period. 42 U.S.C.A. § 2000e-5; [2] *see Beasley v. Alabama State Univ.*, 966 F. Supp. 1117, 1129 (M.D. Ala. 1997) (citing *Perez v. Laredo Junior College*, 706 F.2d 731, 734 (5th Cir. 1983) for the proposition that Title VII continuing violation concepts apply to §1981 claims)).

---

2 "For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice."   42 U.S.C.A. § 2000e-5.

**Merits of Shiver's Claims**

A.   EPA Claims

To establish a prima facie case of discrimination under the EPA, a plaintiff must show that her employer paid employees of the opposite sex differently for equal work on a job the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.   29 U.S.C. §206(d)(1).   Once a plaintiff establishes a prima face case, the EPA allows a defendant to show, by a preponderance of the evidence, that the disparate salaries are caused by a factor other than sex.   29 U.S.C. §206(d)(1).   The defendant employer "may avoid liability by proving by a preponderance of the evidence that the pay differences are based on '(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of productions; or (iv) ... any other factor other than sex.' " *Steger v. General Elec. Co*., 318 F.3d 1066, 1078 (11th Cir. 2003) (alteration in original) (quoting 29 U.S.C. § 206(d)(1)). "The employer bears the burden of proof for these affirmative defenses" and that "burden is a heavy one." *Mulhall v. Advance Sec., Inc*., 19 F.3d 586, 590 (11th Cir.1994).   So long as subjective business justifications, not part of a merit system, are not overly subjective so as to render them incapable of being rebutted, they are legitimate factors to be considered.   *Schwartz v. Florida Bd. of Regents*, 954 F.2d 620, 623 (11th Cir. 1991).   If a defendant proves an affirmative defense, the plaintiff "must rebut the explanation by showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based differential."   *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995).

Fortis does not dispute that Shiver is able to establish a prima facie case of violation of the Equal Pay Act.   Fortis does argue that summary judgment is due to be granted because of its

9

affirmative defense of factor other than sex.

The court, therefore, turns to the proof of the factor other than sex which Fortis relies on for each comparator.

    1.   Coale

Fortis argues that it can establish the affirmative defense that it made salary determinations based on factors other than sex because Shiver did not have a bachelor's degree and previous sales experience identified on her resume while Coale did.   To substantiate that his degree and experience were relied on in setting Coale's salary, Fortis cites to the Admissions Representative Job Description, the Admissions Salary Plan, Shiver's testimony that Kinsey explained sales goals to her, an April 2013 conversation with Cahill in which Shiver was told that experience made a difference in salaries, and Coale's deposition testimony that during his interview Dianne McCrae asked about his qualifications and the experience he had listed on his resume (Doc. #29-5 at p. 31:15-20).

Fortis also points out that in July 2010, January 2011, and June 2013, Donivan, Campus Director at the time, increased Shiver and Coale's salaries by nearly identical percentages. Fortis argues, therefore, that it has proven that the salary Shiver received relative to Coale was based on a factor other than sex.

Shiver argues that Fortis's Human Resources Manager, Hosey, testified that she did not make the decision as to what Coale would be paid. (Doc. #29-4 at p. 29:2-4; 86: 2-6).   Shiver also cites deposition testimony from Cahill (Doc. #31-1 at p. 22:25-23:3) that she did not make the salary decisions for Coale.   Donivan also testified that he played no role in setting Coale's rate of pay.   (Doc. #29-3 at p. 166: 12-21).

The factor other than sex exception applies when "the disparity results from unique characteristics of the same job; from an individual's experience, training, or ability; or from special exigent circumstances connected with the business." *Mulhall*., 19 F.3d at 596 (citation omitted). A defendant invoking the affirmative defense under the EPA must show that the factor of sex provided no basis for the wage differential. *Irby*, 44 F.3d at 954.   Although the Admissions Salary Plan documents support reliance on prior sales experience and education background, there is no evidence cited to show who the decision maker as to Coale's salary was and that a Fortis decision maker considered these factors in setting Coale's pay.   While Coale stated in his deposition that McCrae asked him about his qualifications when he was interviewed, and that McCrae hired him, his deposition does not establish what was considered in setting his salary.   At most, the evidence creates a question of fact as to whether the past experience and a degree were factors actually relied upon in setting Coale's initial salary. Therefore, the court cannot conclude that Fortis has sufficiently met its burden to establish the affirmative defense so as to entitle it to summary judgment.   Summary judgment is due to be DENIED as to this aspect of Shiver's Equal Pay Act claim with Coale as a comparator.

2.   Rojas

With respect to Rojas, again Fortis also does not dispute, for purposes of summary judgment, that Shiver has established a prima facie EPA claim, but argues that Fortis made salary determinations based on factors other than sex.   Fortis again cites to the Admissions Salary Plan which states that prior sales experience is required and a degree is preferred.   Unlike with the claim based on comparison to Coale, however, Fortis points out that Shiver acknowledges in her brief that Cahill and Donivan testified in their depositions that they considered Rojas's experience

11

and college degree in setting Rojas's salary. (Doc #35 at p. 14 n.7).   It is undisputed that Rojas had

a college degree and previous experience working in admissions offices of schools.   Fortis also

points out that Rojas was only employed with Fortis for about three months and did not receive pay

increases during his employment.   Fortis argues that education is a reasonable, legitimate factor to

consider in setting a person's rate of pay, and invokes studies which have shown that using

education levels are related to task performance.

Shiver argues that she can show that reliance on these factors is pretextual because there is

a question of fact as to whether Fortis placed a higher value on Rojas's experience than Shiver's

because Shiver was involved in the training of new admissions representatives.   Shiver points out

that while Rojas had four and a half years of experience working as an enrollment advisor to the

University of Phoenix, Shiver had four years of experience at Fortis at the time of Rojas's hiring.

Shiver states that neither Cahill nor Donivan could explain how Rojas's degree served a business

purpose warranting a nearly $8,000 pay differential because they could not testify as to what his

degree involved.   Shiver also argues that while Fortis contends that the hire of Leanna Pennington

substantiates that Fortis considered experience and a college degree in setting salary, Shiver argues

that Leanna Pennington did not have any relevant sales experience, and that Donivan could not

explain why a biology degree translated into something of value in setting compensation for the

position.

The Admissions Salary Plan, adopted on November 1, 2005 and reviewed on July 7, 2010,

states that starting salary and level of Admissions employees is based on prior admissions/sales

experience, educational background and area of responsibility as hired.   (Doc. #29-1 at pg. 125).

Employees that receive a bachelor's or master's degree while employees and are performing at an

acceptable level will receive a degree completion increase.   (Doc. #29-1 at pg. 125).   The

Admissions Representative Job Description states that an Admissions Representative must have

prior sales experience and must have a degree equal to the level of degree offered at the campus of

employment, and a baccalaureate degree is preferred.   (Doc. #29-1 at p. 122).

Considering Shiver's evidence in a light most favorable to her, the court concludes that her

evidence merely supports an argument that she questions the wisdom of the reasons relied upon by

Fortis.   Particularly with respect to the reliance on Rojas's degree, the documentary evidence

demonstrates that a college degree was to be considered in setting pay, which undermines an

argument that reliance on these factors is a post hoc reason.   *See Steger v. Gen. Elec. Co*., 318

F.3d 1066, 1078 (11th Cir. 2003) (noting that an employer's evidence of its routine practices is

relevant to prove that its conduct at a particular time conformed to its routine practices).   Unlike

the decision regarding Coale's pay, there is also evidence that the decision makers considered

Rojas' degree in setting his salary.   While Shiver has argued that the decision makers could not

explain why the particular bachelor's degree was significant, the evidence before the court is that it

was the fact of the degree which was considered.   A plaintiff cannot meet her burden to show that

reasons are pretextual or offered as a post-event justification by merely stating a "personal dispute

with the company's stated reasons."   *Ralston v. Bell Aerospace Servs., Inc*., No.

1:09CV379-MHT, 2010 WL 2403084, at *9 (M.D. Ala. June 14, 2010).   The court concludes,

therefore, that summary judgment is due to be GRANTED as to this aspect of Shiver's claim.

### B.   Title VII and/ or §1981

Where, as here, the plaintiff seeks to prove intentional discrimination under Title VII and

§1981 by using circumstantial evidence of intent, the court applies the framework first set out by

the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under this framework, the plaintiff must establish a prima facie case of discrimination.

*McDonnell Douglas*, 411 U.S. at 802.   After the plaintiff has established a prima facie case of

discrimination, the burden of production is placed upon the employer to articulate a legitimate

nondiscriminatory reason for its employment action.   *Texas Dep't of Cmty. Affairs v. Burdine*, 450

U.S. 248, 254 (1981).   The plaintiff may seek to demonstrate that the proffered reason was not the

true reason for the employment decision "either directly by persuading the court that a

discriminatory reason more likely motivated the employer or indirectly by showing that the

employer's proffered explanation is unworthy of credence."   *Id.* at 256; *Combs v. Plantation

Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).   A plaintiff's prima facie case, combined with

sufficient evidence to find that the employer's asserted justification is false, may permit the trier of

fact to conclude that the employer unlawfully discriminated.   *Reeves v. Sanderson Plumbing

Prod., Inc.*, 530 U.S. 133, 147 (2000).   That is, even if a plaintiff establishes a prima facie case

and offers sufficient evidence of pretext as to each of the proffered reasons, summary judgment

"will sometimes be available to an employer in such a case."   *Chapman v. AI Transport*, 229 F.3d

1012, 1025 n.11 (11th Cir. 2000).

   1.   Race Discrimination in Pay

        To establish a prima facie case of race discrimination regarding pay, "a plaintiff may prove

that (1) she belongs to a racial minority; (2) she received low wages; (3) similarly situated

comparators outside the protected class received higher compensation; and (4) she was qualified to

receive the higher wage."   *Sumerlin v. AmSouth Bank*, 242 F. App'x 687, 690 (11th Cir. 2007)

(quotation and citation omitted).

Before the court addresses the prima facie case arguments advanced in this case, the court notes that Fortis did not move for summary judgment as to any claim based on Pennington as a comparator, but that Shiver's brief in response claims race discrimination in part in comparison to Pennington.   Upon review of the Amended Complaint, it is clear that it does not allege a separate claim based on Pennington as a comparator, but instead specifically identifies Coale and Rojas as the only comparators for the race discrimination claim.   (Doc. #16 at ¶ 29 a, b).   The time for filing an Amended Complaint has passed, and "a plaintiff cannot amend his complaint through argument made in his brief in opposition to the defendant's motion for summary judgment." *Miccosukee Tribe of Indians of Florida v. United States*, 716 F.3d 535, 559 (11th Cir. 2013). Summary judgment is, therefore, due to be GRANTED to the extent that Shiver attempts to assert in her brief a claim based on Pennington as a comparator.

a.   Coale

Fortis argues that Coale is not similarly-situated to Shiver because he had a different education level, different experience, and different qualifications; that Coale made a salary demand while Shiver did not; and that Shiver and Coale were hired by different decision makers.

Shiver argues that Fortis is conflating the prima facie case burden with pretext analysis because the issue is whether the pay disparity was truly based on a difference in experience and education.   The court agrees that it is more appropriate to analyze the identified dissimilarities in the context of pretext analysis.

Shiver adopts for her argument the arguments she advanced in opposition to the summary judgment motion as to the EPA claims.

15

Although the burden of proof with an EPA claim is not the same as a defendant's lessened burden under Title VII and §1981 to articulate a legitimate, non-discriminatory reason for an employment decision, even under that standard "there must be evidence that asserted reasons . . . were actually relied on or the reasons are not sufficient to meet defendant's rebuttal burden." *Increase Minority Participation by Affirmative Change of Today of Northwest Florida, Inc. v. Firestone*, 893 F.2d 1189, 1194 (11th Cir. 1990) (quotation and citation omitted).   "Moreover, this Court has squarely held that an employer may not satisfy its burden of production by offering a justification which the employer either did not know or did not consider at the time the decision was made." *Turnes v. AmSouth Bank*, 36 F.3d 1057, 1061 (11th Cir.1994).   Rather, the defendant "must present specific evidence regarding the decision-maker's actual motivations with regard to each challenged employment decision." *Walker v. Mortham*, 158 F.3d 1177, 1181 n. 8 (11th Cir.1998).

Therefore, as discussed above in connection with the EPA claim, because the evidence presented does not establish that the identified reasons were actually relied upon in setting Coale's pay, the court concludes that summary judgment is due to be DENIED as to this claim.

b.  Rojas

With respect to Rojas, Fortis argues that he was hired more than four years after Shiver at the recommendation of a different decision maker, Jourdeanna Yates ("Yates"), and his pay was set by Donivan, with input from Yates and Cahill.   While unemployed at the time, Rojas accepted a salary less than he had made at his previous job.   Although contending that Shiver and Rojas are not similarly-situated, Fortis also articulates as a legitimate, non-discriminatory reason that Shiver did not have a college degree and did not identify any sales experience on her application and

resume.   Therefore, the court will turn to Shiver's evidence of pretext.

Shiver adopts the same arguments she used in opposing summary judgment on her EPA claim.   To establish pretext in the context of a Title VII claim, a plaintiff must show that the defendant's proffered reason was not the true reason for the employment decision. *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir.2005).   This may be done "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* The plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* "The heart of the pretext inquiry is not whether the employee agrees with the reasons that the employer gives for the discharge, but whether the employer really was motivated by those reasons." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1333 (11th Cir.1998). The plaintiff must introduce "significantly probative evidence" showing the defendant's reasons were pretext. *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir.2006).

As noted earlier, Shiver questions the reliance on experience and a college degree in setting a rate of salary.   The undisputed evidence, however, is that Rojas's salary was set considering that he had obtained a college degree, and that consideration of a college degree was appropriate under Fortis's Admission Representative personnel requirements.   For an Admissions Representative at a school, whose essential duties include presenting to students the requirements for starting and being successful in school, to have a college degree is certainly a legitimate thing to consider. Courts are not super-personnel departments that review the propriety of an employment decision.

*See, e.g., Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1092 (11th Cir. 2004)(stating that "[t]he role of this Court 'is to prevent unlawful hiring practices, not to act as a super personnel department that second-guesses employers' business judgments.' ")(citation omitted).   The court concludes, therefore, that summary judgment is due to be GRANTED as to this aspect of Shiver's claims.

### 2.   Gender Discrimination

The only timely-filed Title VII gender discrimination claim is a claim by Shiver using Rojas as a comparator.   Fortis assumes for purposes of the Motion for Summary Judgment only that Shiver can establish a prima facie case of gender discrimination in pay.   Fortis argues, however, that Shiver's lack of a college education and lack of sales experience are legitimate, non-discriminatory reasons for the difference in her pay.

For the reasons discussed in connection with Shiver's race claims using Rojas as a comparator, the court concludes that summary judgment is due to be GRANTED as to this claim.

### 3.   Retaliation

A prima facie case of retaliation requires a showing that the Plaintiff (1) engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) there is a causal relation between the two events.   *Meeks v. Computer Assoc. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994).   Causation must be proven by traditional "but for" causation principles.   *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013).   Fortis has moved for summary judgment on the retaliation claim by separately addressing Shiver's schedule change, pay, and termination as

alleged retaliatory acts.   Fortis contends that Shiver's retaliation theory is unclear.

The court agrees that Shiver's retaliation theory is somewhat unclear.   The heading she uses in her brief is that the Defendant retaliated against her by terminating her employment (Doc. #35 at p. 45).   Shiver also argues that schedule changes were made in response to protected activity, although she then argues that it was the schedule change which ultimately led to her termination.   Therefore, it appears that Shiver claims that her work schedule was changed which ultimately led to her termination in retaliation for protected activity.

Fortis acknowledges that Shiver engaged in protected activity by filing EEOC charges, one in October 2010, one in December of 2013, and one in April 2014 after her employment was terminated.   Fortis argues that Shiver cannot establish the second or third prong of her prima facie case of retaliation in the form of a work schedule change and cannot establish the third prong of the prima facie case with respect to a pay or termination retaliation claim.   Fortis argues that the change in Shiver's work schedule is not an adverse employment action because the change required all Admissions Representatives to work some evenings and some weekends and it was not specifically aimed at Shiver.   Fortis also argues that there was no causal connection because Yates, National Director of Admissions, recommended in June 2013 that the Dothan campus have weekend and evening coverage, and Yates was not aware that Shiver had filed an EEOC charge, and did not know Shiver had talked to Cahill about her pay.

As refined in her brief, however, Shiver's argument appears to be that the schedule change was re-implemented by Donivan and Cahill because Shiver filed an EEOC charge.   Shiver's argument is that sometime after the schedule change was imposed, it was then lifted, but after Shiver filed an EEOC Charge in December 2013, in March 2014, the schedule change was again

imposed.   Shiver states that there is evidence that the decision to impose the schedule change was made in February 2014.   Then, Shiver says, because she could not work the changed schedule, her employment was terminated.

First, with regard to the temporal proximity argument, the court notes that Shiver filed an EEOC charge on December 9, 2013 and that her schedule change was imposed in March of 2014. Shiver argues in brief that the decision was made in February to change the schedule, but cites no evidence to support that proposition in the argument section of the brief.   In the fact statement section of her brief, she has a footnote which states that Hosey in Human Resources was contacted a month prior about changing Shiver's schedule.   (Doc. #35 at p.17 n.9).   It is apparently based on this evidence that Shiver contends the decision was made in February 2013 to change her work schedule.   Hosey's deposition testimony, however, is that Donivan and Cahill contacted Hosey about changing Shiver's work schedule "a month before she left," not a month before the work schedule was re-imposed. (Doc. #29-4 at p.31:15-16).   Shiver's employment was terminated on April 1, 2014.   Although the evidence cited by Shiver does not support a finding that the decision was made in February to re-impose the scheduling change on Shiver, because the EEOC charge was filed on December 9, 2013, the evidence creates a question of fact as to whether the decision was made within three months of the protected activity, so the court cannot conclude as a matter of law that there is no temporal proximity.   *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (stating that "A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough.").

Fortis' argument regarding the lack of an adverse employment action and the legitimate non-discriminatory reason are essentially the same:   all of the Admissions Representatives were

required to work the evening and weekend hours, but only Shiver refused to work her assigned schedule.   That is, it was not an adverse action to change the schedule because everyone was treated the same, but even if it were, Shiver was terminated because only she did not comply with the changed schedule and no one else was treated any differently.   The court will, therefore, address the question in the context of pretext analysis.

In her brief, Shiver argues that she established a prima facie case of retaliation and states that Fortis manufactured a situation to justify her termination, but does not directly respond to Fortis's arguments that the change in schedule required all Admissions Representatives to work some evenings and some weekends, and that Shiver was terminated because she was the only employee whose schedule was changed who refused to work the changed hours.   Donivan testified in his deposition that Rojas and Pennington, the other Admissions Representatives, were required to work weekends and nights and did not refuse to work that schedule.   (Doc. #29-3 at p.187:20-188:11).   Shiver confirmed in her deposition that she is unaware of any other Admissions Representative being treated differently than she was with regard to the scheduling. (Doc. #29-1 at p.137:13-20).   While Shiver argues in brief that she was allowed to stop working nights and weekends and then the requirement was re-imposed, the deposition testimony of Donivan cited by Shiver states that for a few weeks after the new scheduling requirements were imposed, Shiver "decided not to do it anymore," not that Fortis had agreed to her no longer working nights and weekends.   (Doc. #29-3 at p.156:19-20).   Even accepting, however, as the court did in the context of the prima facie case analysis, that Fortis re-imposed the scheduling requirement on Shiver, there is no evidence that any scheduling requirement was placed on Shiver alone.   Instead, it is undisputed that all of the Admissions Representatives were treated the same.

The court must conclude, therefore, that Shiver has not created a question of fact as to pretext.

*See Snellgrove v. Teledyne Abbeville*, 117 F. Supp. 2d 1218, 1246 (M.D. Ala. 1999) (finding that plaintiff's argument that she should not have been made to accept a different shift or be terminated did not establish pretext without evidence that the defendant had allowed other employees whose jobs had been moved to second shift to take vacant jobs on the first shift in lieu of the reassignment).   Summary judgment is due to be granted as to her retaliation claims.

## V. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1.  The Motion for Summary Judgment is DENIED as to Shiver's claims in Count I under §1981 for race discrimination with Coale as a comparator and in Count IV for violation of the EPA with Coale as a comparator.

2.  The Motion for Summary Judgment is GRANTED as to the claims in Counts I-IV in all other respects and judgment is entered in favor of Career Consultants, Inc. d/b/a Fortis College Dothan and against the Plaintiff Stacie Lashay Shiver on those claims.

3.  The case will proceed on the §1981 race discrimination in pay claim and the Equal Pay Act claim based on the pay rates of Shiver and comparator Coale to the extent that those claims fall within the applicable statutes of limitations.


Done this 2nd day of November, 2015.

/s/ W. Harold Albritton_____
W.   HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE